Bertram R. Gelfand, J.
In this proceeding to settle the account of the now deceased executrix of this estate, objections have been interposed seeking to surcharge the executrix. The executrix appears in this proceeding by her executors. In response to the objections, they have served and filed a document labeled "cross petition.” This paper was served by mail upon the firm of attorneys who represented the deceased executrix during the period she served as fiduciary. The paper has also been similarly served upon an individual member of that firm who is also a residuary legatee in the estate. The gravamen of this cross petition is that any improper acts by *717 the executrix which result in a surcharge were caused by the legal malpractice of the firm of attorneys and the individual attorney to whom the cross petition was mailed and that these attorneys should indemnify her estate for any surcharges that may be imposed.
The present application before the court is a motion by the attorneys named as respondents to dismiss the cross petition on the grounds that this court lacks subject matter jurisdiction over a third-party malpractice action, that there is no such pleading as a cross petition in the Surrogate’s Court, and that the manner of service of this pleading failed to confer personal jurisdiction over them.
The Constitution of the State of New York mandates that "[t]he surrogate’s court have jurisdiction over all actions and proceedings relating to the affairs of decedents, probate of wills, administration of estates and actions and proceedings arising thereunder or pertaining thereto, guardianship of the property of minors, and such other actions and proceedings, not within the exclusive jurisdiction of the supreme court, as may be provided by law. The surrogate’s court shall exercise such equity jurisdiction as may be provided by law.” (NY Const, art VI, § 12, subds d, e.) The only type of case which the Surrogate’s Court is constitutionally precluded from exercising jurisdiction over because it is within the exclusive jurisdiction of the Supreme Court is a crime prosecuted by indictment (NY Const, art VI, § 7, subd a). The Legislature has "provided by law” that the Surrogate’s Court with one exception shall have jurisdiction to the full extent permitted by the Constitution over the affairs of the decedents and the administration of estates (SCPA, §§ 201, 209). The single statutory exception is that the Surrogate’s Court was specifically not granted jurisdiction over inter vivos trusts (SCPA, § 209, subd 4).
SCPA 201 (subd 3) expressly provides that the Surrogate’s Court has power to "determine all questions, legal or equitable, arising between any or all of the parties to any action or proceeding, or between any party and any other person having any claim or interest therein, over whom jurisdiction has been obtained as to any and all matters necessary to be determined in order to make a full, equitable and complete disposition of the matter.” (See, also, SCPA 209, subds 4, 9.) Even prior to the adoption of the present pertinent constitutional and statutory provisions, Surrogates, in the exercise of *718 their inherent jurisdiction over estates, have been called upon to determine matters usually tried in the Supreme Court when the determination of such an issue was incidental to a proceeding normally before the Surrogate’s Court. In the exercise of this jurisdiction, under certain circumstances, Surrogates have even determined estate claims involving inter vivos trusts (Matter of Bourne, 4 Misc 2d 610; Matter of Coyle, 200 Misc 421; Matter of McCoy, 157 Misc 281; Matter of Sweeney, 155 Misc 461; Matter of Koehler, 134 Misc 532; Matter of Ehlers, 133 Misc 424; cf. Matter of Lachlan, 16 Misc 2d 80, revd 8 AD2d 635). In Matter of Raymond v Davis (248 NY 67, 72), Judge Cardozo, in holding that a Surrogate as an incident to the claim of a surviving partner to share in the estate, could order the liquidation of the partnership, stated: " 'Concentration of jurisdiction as to decedents’ estates’ (per Foley, S., in Matter of Haigh, supra) is the purpose clearly revealed in the statutory scheme. 'The State has empowered surrogates in unmistakable language, and it is not the function of the courts to discover or to fashion reasons for thwarting the manifest policy’ (per Thomas, J., in Matter of Coombs, 185 App. Div. 312, 314). To remit the claimant to another forum after all these advances and retreats, these reconnaissances and skirmishes, would be a postponement of justice equivalent to a denial. If anything is due him, he should get it in the forum whose aid he has invoked.”
In interpreting this broad constitutional and statutory jurisdictional mandate, my learned colleague, Surrogate Midonick, recently held in Matter of Young (80 Misc 2d 937), that even independent of any other proceeding, the Surrogate’s Court had jurisdiction over an action for breach of a royalty contract entered into by the decedent. He further held that, since the disposition of the substantial claim at issue was crucial to the administration of the estate, the Surrogate’s Court was the most appropriate forum in which to litigate the issues.
To prevent a multiplicity of actions involving the same parties, circumstances, or facts, the CPLR permits both cross claims and third-party practice seeking indemnification (CPLR 3011, 3019, subd [b]; 1007). The SCPA states that, "The CPLR and other laws applicable to practice and procedure apply in the surrogate’s court except where other procedure is provided by this act” (SCPA 102).
In order to effectively administer justice, it is incumbent upon the Surrogate’s Court to exercise its constitutional juris *719 diction to the broadest extent. The proper administration of justice mandates the pursuit of procedures which will allow the most expeditious and economic litigation of issues possible. To achieve this, both fragmentation and a repetition of testimony must be zealously avoided, if both litigants and the court system generally are not to bear unconscionable burdens and costs resulting from having the same witnesses repeat the same testimony in separate trials of related issues. Much of the testimony pertinent to a claim of malpractice is also germane to the issue of counsel fees which must be determined in the accounting proceeding. The avoidance of third-party practice in the instant case would impose upon all of the parties unjustified fragmentation of the proceeding and unnecessary repetition of testimony. The breadth of the jurisdiction granted to the Surrogate’s Court, together with the powers incidental thereto, compels the use of third-party practice in the Surrogate’s Court when the same can resolve an issue which is intertwined with an issue before this court (see 1972 Supplemental Practice Commentary, McKinney’s Cons Laws of NY Book 58A, SCPA 201).
To attach any great significance to the title which the cross petitioner chose to place on the paper he utilized to apprise his adversary of the issues and bring these issues before the court, would be a gross misplacement of emphasis in an era of grossly over-crowded court calendars in which the ravages of inflation have, along with all other expenses, ballooned the cost of litigation to those who seek to have their rights peaceably settled by the rule of law. The essential function of a pleading is to clearly apprise an adverse party of the allegations he must meet so that he may prepare an adequate defense. In the instant matter, the cross petition meets this test. It would be an avoidance of the substance of the issue to be concerned with what label should be attached to the pleading in order to allow the court to effectively exercise its constitutional jurisdiction to determine the. issue presented.
The fact that Surrogates usually do not hear malpractice cases is not a sufficient ground for refusing to entertain this case. The machinery of justice must proceed to reach determinations based upon what is proper and not merely upon what is usual in each instance. The limitation in SCPA 302 that unless "directed by the court” there are no permissible pleadings other than a petition, answer or objections and an account presents no problem. Implicit in a "petition” being a *720 proper pleading is the right of an adverse party to utilize a cross petition to the same extent that coexecutors, each filing his own account, might, in the same proceeding, each file objections to the other’s account. Whether the second set of objections is labeled "objections” or "cross objections,” is of no significance or substance. Procedures must remain sufficiently flexible to accommodate each problem as it arises. It is this viability within the framework of the Constitution and the statutes that is the bulwark of the ability of the rule of law to be a surviving system of justice.
For this court to fail to entertain the cross petition containing subject matter over which it clearly has jurisdiction, would result in the piecemeal litigation in different forums and the delay specifically deplored and eloquently characterized by Judge Cardozo in Matter of Raymond v Davis (supra, p 72) as "a postponement of justice equivalent to a denial.” It is concluded that the contention that the court does not have jurisdiction over the subject matter of the cross petition is without merit.
. The question of jurisdiction over the person of the respondents named in the cross petition is somewhat more troublesome. The respondent firm of attorneys are already parties to this accounting proceeding by dint of their appearance in support of their claim for legal fees. Since this firm is already a party to the proceedings and has appeared as its own counsel, the court has no difficulty in the cross petition having been served upon it by mail. Once a party has appeared by counsel in a proceeding subsequent pleadings may be served upon its counsel by mail (CPLR 2103, subd [b]). Accordingly, as to said firm, the court finds no basis for granting the relief sought on this motion and the motion is denied.
The individual member of. the firm against whom the cross petitioner seeks relief has never appeared in the proceeding. His presence at settlement conferences does not amount to an appearance in the proceeding. Jurisdiction over him with reference to the relief sought in the cross petition can only be obtained by personal service of a supplemental citation upon him apprising him of the relief sought against him. The citation served upon him as a legatee in response to which he took no action and which does not refer to the issue presented in the cross petition does not make him a party appearing in this proceeding. The only other method by which he could be made a party to this action other than personal service of a *721 supplemental citation is by court authorized alternative methods of service in the proper circumstances upon an appropriate application. No such application was ever made in this case. It is, accordingly, concluded that the service of the cross petition by mail on the individual member of the firm has not given the court jurisdiction over his person with reference to the cross petition and as to said individual member of the firm the motion to dismiss is granted without prejudice to the cross petitioners joining him in the proceeding by proper service of a supplemental citation. This lack of personal jurisdiction can, of course, also be cured by the individual member of the firm voluntarily appearing in the proceeding, should he deem such course advisable in order to expedite the trial of the issues.